Good morning, your honors. May it please the court, Angela Dunning, Cooley LLP, pro bono counsel for the petitioner Marcelino Gonzalez Hernandez. I would like to reserve three minutes for rebuttal. This case is a matter of life and death for Mr. Hernandez. He is the quintessential victim of political persecution as well as persecution on account of his membership in a particular social group comprised of indigenous Trekis who refused to participate in MOLT. MOLT is not only an officially recognized and state-funded political party in the state of Oaxaca, Mexico, where Mr. Hernandez is from, it's also a notoriously violent paramilitary organization that brutally murders anyone who refuses to participate in its political activities. For failing to join and support this group, MOLT committed a number of heinous acts of persecution against Mr. Hernandez, including stabbing him, beating him, repeatedly threatening him with death personally, forcing him at gunpoint to accompany MOLT members as well as members of the municipal police to MOLT headquarters to register his support of MOLT. In addition to the specific acts of persecution that Mr. Hernandez has suffered, as to which he testified to some of what I've just relayed below and some he did not because of ineffective assistance, the district court, excuse me, the immigration court found that he had testified credibly. I want to make that absolutely clear. In addition, Mr. Hernandez testified in the evidence below established that many, many other members of the TREAKY community who, like Mr. Hernandez, have refused to participate in MOLT's activities, have suffered the same violent ends. These include, most notably, his brother, Nabor, who, days after being deported to Mexico, was forced to transport TREAKYs to forced MOLT marches and brutally executed in an ambush killing for failing to do that. In the same shooting, Mr. Hernandez's 10-year-old brother was shot in the neck and his 15-year-old cousin was killed. Perhaps most poignant is the example of his cousin Eusebio and Mr. Hernandez's two nieces, Esther and Elsa, who, upon moving away from their MOLT-controlled town, were gunned down on Christmas Eve in their car. Eusebio was killed. Her husband was shot. Esther, a 10-year-old at the time, was shot through the leg. All because they moved away and refused to participate in the marches. And that evidence with respect to Elsa and Esther and Eusebio was in the record below, not because of anything that Mr. Hernandez's counsel did, but because he had friends and family who tried to pull together evidence and testimony. What was the basis for the Petitioner's fears that MOLT thought that he paid an assassin to kill a MOLT leader? Your Honor, I don't know what the basis for that was specifically from the record below, aside from the fact that he had heard a rumor to that effect. Whether MOLT, in fact, attributed responsibility for the murder of Mr. Hernandez's uncle to him or that was a rumor that was circulating or a pretext is really largely irrelevant in the larger ---- that was one thing that the immigration judge certainly seized on and focused on to the exclusion of a tremendous amount of additional evidence, again, submitted by Mr. Hernandez with no help from counsel, that MOLT specifically persecutes treaties for refusing to participate in rallies. And in this context is further evidence of their viewing Mr. Hernandez as politically opposed to their group. He has stated, he stated very plainly before the IJ that he fears reprisal for his neutrality, that he fled Mexico for the first time in 1998, 1988, rather, because he did not want to participate in the group. And he established not only that he is on MOLT's radar, that MOLT has made threats against him, but that similarly situated treaties, including family members, have been hunted down and killed. Well, he somehow, though, voluntarily went back, is that right? Yes, Your Honor, that is correct. Without incident? He was back in Mexico, Your Honor, for only once in approximately 20 years when his mother was ailing. Nothing happened to him then? Not in that week or two, Your Honor, which is a very, very short amount of time. There was nothing in the record to suggest that anyone alerted MOLT to his presence. You said he's on the radar screen, and my question is, I mean, he went back, and radar or no radar, he was able to come and go without any problem? Your Honor, that is true. There are cases that have recognized, in certain circumstances, that extended visits back to one's home country without incident can be somewhat probative of whether it would be safe to return. Here, one week to two weeks, we would submit certainly is not probative of that. And the reason he is ultimately here, of course, is that as a result of that visit, he ended up attempting to assist Esther and Elsa Flea from the violence that they had been subjected to. Those girls now have asylum in the United States, as well as many other family members of Mr. Hernandez. Let me ask you this. I'm concerned about how the PIA handled the motion to reopen, apparently requiring that this be raised on direct appeal, and there is no requirement that that be done that way. So what happens? If we agree with you that the motion to reopen was mishandled, what do we do? Well, Your Honor, we certainly agree that the motion to reopen was mishandled on numerous occasions. In the first instance, you're right, the BIA held that it could not and would not consider Mr. Hernandez's motion to reopen because it should have been his ineffective assistance of counsel claim, which is amply documented in the papers, should have been brought on direct appeal. That, as you say, is completely incorrect. We sought reconsideration of that decision to point out that they had violated their own regulation. I'm with you. What do we do about it? Well, Your Honor, like the Muhammad case, this is the cliché situation of two bites at the apple. The BIA completely abdicated its responsibility on two occasions to consider any of the absolutely compelling evidence that was submitted with his motion to reopen. There is no question whatsoever that it caused prejudice. It may have affected the results. Had the IJ been able to hear that he had been stabbed and had visible scars, certainly there would have been past persecution found. So do we say to the BIA, go back and reconsider the motion to reopen? Your Honor, Petitioner ---- Look at all the stuff they could have presented, or do we do something else? Forgive me, Your Honor. Petitioner requests that this Court, with respect to the motion to reopen, if it finds that asylum is not appropriately granted with respect to the merits petition, that this case be remanded to the BIA with instructions to reopen. There really is no reason to send that back to the BIA in the first instance here where there is no conclusion that could be reached other than that Mr. Hernandez suffered the effects of ineffective assistance and is entitled not only, Your Honor, to asylum but also to withholding of removal. It's not just a 10 percent chance. It is a virtual certainty. What did the lawyer do that was ineffective? Well, I would say principally the biggest problem, Your Honor, is she conducted no factual investigation whatsoever. She never met with him or spoke to him once. And that caused what evidence to be lost? Your Honor, the evidence that did not come in includes that he had been stabbed by Moult, he was officially threatened for, with death for refusing to join. He was beaten along with his father. He was taken at gunpoint to the town hall with municipal police members and forced to register. And let me add just a couple more things. This was not presented at 48th. This was not presented, Your Honor. It also was not presented. Counsel, that stabbing, was that when he was young? Yes, Your Honor. That was in roughly 1987, just as he was graduating from high school and Moult began to actively recruit him. In addition to that, after he fled Mexico to the United States, and this is crucial, Your Honors, because the immigration judge and the BIA found that he had not suffered any threats directed to him personally. After he left to the United States, Mr. Hernandez's mother was visited in Sonora, in the north of Mexico, by Moult members who demanded to know where he was. When she told them he has left for the United States, they said he is disloyal and he will be killed if he returns to the United States. That is in his declaration that was submitted in support of the motion to reopen. His attorney below never found out that, never asked him a single question, never prepared him to testify. In addition, his grandmother down in Oaxaca, who lived with a Moult leader, Mr. Hernandez's uncle, was forced to attend a Moult rally where his name was specifically mentioned to all of the attendees as someone disloyal to the group who would be taken care of. Is relocation an option here? And I know that the BIA may not have developed that fully in its decision or rationale for its decision, but perhaps might have overlooked it to some extent. But is relocation possible here from this record? No, Your Honor. And there are multiple reasons, some of which are in the record and some of which are not, like the visit to his mother in Sonora. I will say the record Sonora is outside the Oaxaca region? Oaxaca is in the very southernmost part of Mexico and Sonora is in the northernmost part. But again, is that outside of the Moult area? I'm sorry. The testimony below establishes that Moult is everywhere throughout Mexico. Moult has killed people in Baja, which is the state adjacent to Sonora in the north. But in addition, the record testimony before the IJ established that Mr. Hernandez owns no property, that Trikis do not live in isolation, that he has no place that he can live. Even when his mother and brother were living in Sonora, and they are now here on humanitarian parole, Your Honors, there was no room for him to live there. And his six children, five United States citizen children and his family live here. There's also evidence in the record below that Trikis suffer marginalization and discrimination throughout Mexico. They are denied employment. Sending him back is simply not an option, and there's no evidence that will change that conclusion. I would also ---- So I'm clear the relief you're asking for is for us to direct the BIA to reopen the case, send it back to the IJ for a new asylum hearing where all the important information that didn't come out will be presented for the first time. I am asking that, Your Honor, as a second alternative. My primary requested relief is that based on the record below, this Court find that the immigration judge and the BIA's decision ultimately did not comport with substantial evidence because ---- Counsel, on that ground, though, am I correct? We could not consider any of the new evidence that was submitted with the motion to reopen. In other words, on that ground, the record is what was first submitted, right? Your Honor, that is correct. We have to say that that incomplete record compels the conclusion that he was intended to relieve. That is correct, Your Honor. But even that incomplete record, I will again just submit, included testimony that the IJ found credible, both from Mr. Hernandez as well from Adam Sanders, a person who's worked for many years now with the treaty community, as to the deaths of Eusebio and the shooting of Esther for refusing to participate in the marches, the death of Mr. Hernandez's brother for refusing to transport people to marches, and the many, many other treaties who, similarly situated to Mr. Hernandez, have refused to join and been persecuted as a result. I'll reserve the remaining time. Thank you, Your Honor. Thank you very much, Ms. Dunn. Good morning. Good morning. May it please the Court, Jennifer Corey on behalf of Attorney General Eric Holder. I first want to just quickly kind of unravel some of the information that was just presented. I think a lot of the new evidence with regard to Mr. Gonzalez-Hernandez's asylum claim, a lot of the new evidence that was submitted with the motion to reopen is what opposing counsel was referring to. And as Judge Gold was questioning about earlier, the Court cannot consider that information. So that includes the allegations that Mr. Gonzalez-Hernandez was stabbed, that he was forced to register with the Malt, and that he was officially threatened by the Malt because of his neutrality. I understand that she, Ms. Dunning, is offering that as evidence of the prejudice that Mr. Gonzalez sustained by the lawyer not introducing this. Well, we can't even – I understood it to be straight towards the asylum claim, but even the prejudice would not be something that the Court can consider at this time. Why? Wasn't that told to the BIA, look what the lawyer didn't present? Right. Yes, Your Honor. But the BIA didn't deny the motion to reopen. How do we weigh prejudice? I mean, she has to prove that counsel was in a, you know, didn't do what she should have done, and this is what was lost as a result. Right.  Why can't we look at that to say, yeah, look what she didn't put in? Well, I guess you could look. I mean, I think the BIA only denied the motion to reopen without looking. That's a problem, too, yeah. Right. I know that that's another issue in the case. I wouldn't say it's a problem so much here, just based on the circumstances here. The BIA wasn't requiring that in denying the motion to reopen, it wasn't requiring that motions to reopen based on effects of assistance counsel be filed as with the appeal as a motion to remand. It was saying that in this case, because based in its discretion, based upon the circumstances, that opposing counsel first defended the actions of the attorney below, stating that there was ample evidence before the immigration judge that the claim should have been upheld. The asylum claim should have been upheld. And then only after But BIA did not say that in ruling upon denying the motion to reopen that that new information would have made a difference or not. It simply said that, well, we're not going to consider it because it should have been raised in the first instance, which was incorrect. It could have considered it or reconsidered it. It should have been raised in the appeal. Your Honor, you're saying that was incorrect? In the sense that, you know, whether or not it's – whether or not there's a valid basis for what she's saying in terms of whether or not it's going to affect the decision of the BIA or the immigration judge, in the way that they did it, it simply said, we're not going to consider it because it should have been raised first. Right. And that's incorrect. I would argue that that's not incorrect. BIA has wide discretion to grant or deny a motion to reopen. Of course, she had every right to file a motion to reopen, but she doesn't have every right to be granted a motion to reopen. And here, under the circumstances, circumstances plainly show that she was aware or should have been aware of any allegations of ineffective assistance of counsel at the time that she filed the appeal and that she did not file the claim with an appeal. In fact, she doesn't even have to file an appeal. She could have filed a motion to remand straight off. And instead of doing that, she went ahead and defended everything that was presented before the immigration judge below, when now she's saying that there were crucial facts and evidence. I mean, the claim is completely changed from where it was on appeal to where it is now with the motion to reopen. Yeah. She blames that on the poor presentation that the lawyer gave in front of EIJ. Suppose we disagree with you about raising ineffective assistance of counsel on direct appeal. Suppose we agree with her that the time to raise that is after the direct appeal and, therefore, we have to send it back. Where do we go from there? You would send it back to the board for to look at the merits of ineffective assistance of counsel claim. At that point, the board could either reopen based on the merits or not. And if she would – if the board denies the motion to reopen again, then she could again appeal to this Court. I think Ms. Dunning is asking us to say, A, the board threw the case out on an improper procedural mechanism, and, B, now that it's in front of us, there's no question but that there was ineffective assistance of counsel, send it back for a new hearing. What's wrong with that? To – oh, send it straight back for an asylum hearing. Under Ventura and other Supreme Court case law, the Court simply cannot do that. The BIA hasn't considered the merits of this IAC claim, of ineffective assistance of counsel claim. And so the Court would then be taking what's – the statutes of place primarily in the hands of the agency and deciding it in the first instance, which is directly contradictory to the law. Also, I mean, this Court has already said – has said directly in Lopez v. Ashcroft that this bites at the apple as far as the agency is concerned, that you want the – you want the consideration of the agency first, that it benefits the court, because this primarily is fact-finding. It's a Lozada claim in which, in fact, the opposing counsel directly contradicts what – what the Petitioner is saying. She – she disclaims everything the Petitioner is saying, and that has to be primarily placed in the hands of the board. This Court can't look at that. That is just – it's fact-finding that's outside of this Court's hands. I just want to say – So I have a question, counsel. I have a question. Okay. So under Ventura, as I understand you, under Ventura, your position is we cannot go as far as to say that, based on what was presented, it's clear there was ineffective assistance of counsel in not presenting this other evidence. We can't say that, right? Right. But could we say, gee, it sure looks to us like a good claim, but the agency has to decide it first? Sure. You can do that. That would be a recommendation from the court. You can only reopen you can only, sorry, remand to say that the board look at the merits, but you can put your advice in there in your decision to remand. Does that answer your question? That does. Thank you. I just quickly want to say, too, that on the record that is before the Court as far as the asylum claim is concerned, there was substantial evidence, substantial evidence supports the immigration judge's decision. Based upon the evidence that was before the immigration judge, there was no evidence of past persecution. All Mr. Gonzalez-Hernandez testified to on direct questioning about whether he was publicly harassed or not because he was a member of that tribe, and he was not publicly  He can't be made fun of and harassed based upon his tricky, tricky identity and membership in that tribal tribe. And then the deaths of the several family members that he claims occurred, none of them show that they were based upon the political opinion. His brother was killed, as he testified directly to, because he failed to pay gas money back to the Malt. His uncle was killed by other Malt members, and his uncle was a leader of the Malt. Therefore, none of that was on account of his political opinion. And as far as his nieces being shot at and his aunt, his niece's aunt being killed, the only, before the immigration judge, the only evidence that that had anything to do with political opinion was the niece's father's speculation that he thought that it had to do with the Malt. Let me ask a question. Speaking just for myself, I don't believe in pushing anybody into mediation who doesn't want to go. This one here, the IJ found the petitioner to be credible. Yes. There do appear to be some irregularities in the way the motion to reopen was handled in the motion to reconsideration. Would it be useful to explore mediation, or is this not one that you think would be worthwhile? I believe it could be useful, and I believe that the government would be open to it. Fair enough. I appreciate your candor. All right. If there are no more questions. Thank you, Ms. Gordon. Thank you. Ms. Dunning, back to you. You had about two minutes and change, I believe. Thank you, Your Honor. I guess a couple of points just to address what counsel just mentioned, in no particular order, frankly. Counsel indicated that the BIA has wide discretion with respect to motions to reopen. Our position is that the BIA grossly abused that discretion. How about the Ventura point? Could you address that? In other words, counsel argued with some force that our panel could make a recommendation but could not rule that there was ineffective assistance and say, you know, now reassess all the evidence that all we could do is remand it with instructions for the agency to do that and maybe make a recommendation. But how do you view Ventura? Your Honor, I guess I would point the Court back to its decision in Mohamed where the BIA refused to reach the merits of the ineffective assistance claim. It did address prejudice. This Court went on to find that ineffective assistance of counsel had been demonstrated and to order that the motion to reopen be granted. The Court went beyond the limited analysis that the BIA had provided and issued a decision based on the various elements of an ineffective assistance of counsel claim. This Court also has discretion where remand would be utterly futile to take up issues in that instance, and here the BIA has twice abdicated its responsibility to look at this evidence. But there's no question on the evidence presented that his counsel conducted no fact-finding, never met with him, never spoke to him, never adduced the facts that demonstrate overwhelming past persecution, as well as entitlement to withholding of removal and relief under the Convention Against Torture. And there have never been any facts suggested or put forward by the government, any argument that there would be any additional fact-finding necessary. There's no argument that the Lozada factors have been satisfied. There's no dispute with respect to Mr. Hernandez never getting a translator to speak with his attorney. She speaks English. He speaks at best some Spanish. She admits she never even attempted to speak to him. So it's difficult to see how any other result could obtain. I gather you don't have any problem exploring mediation with the government? We would be willing to hear that, Your Honor, but we will be standing firm on the grounds that Mr. Hernandez is entitled. You mentioned before you were pro bono. Were you appointed by the Court or? We are pro bono counsel through the Lawyers' Committee for Civil Rights, Your Honor. Okay. Because normally we have a list of pro bono. You're not here, but in any event, we thank you for doing the case. Thank you. And I forgot to mention, Mr. Hernandez has been here with me today, and we thank you for your consideration. Thank you. Ms. Corey, thank you, too. The case just argued is submitted.
judges: Lemelle, Silverman, Gould